## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DANIEL LOUTH, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| NFL ENTERPRISES LLC, | |
| Defendant. | |

Plaintiff Daniel Louth ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

### NATURE OF THE ACTION

1.     This is a class action suit brought against Defendant NFL Enterprises LLC ("NFL" or "Defendant") for violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et seq*, and the Rhode Island Video, Audio, and Publications Rentals Privacy Act ("RIVRPA"), 11 R.I. Gen. Laws § 11-18-32.

2.     Defendant develops, owns, and operates a popular mobile application, titled "NFL" ("NFL App" or "App"), which describes itself as a "pure football app" that disseminates "live local and primetime games, exciting videos and highlights, and replays of every game."[1]

---

[1] GOOGLE PLAY, NFL, https://play.google.com/store/apps/details?id=com.gotv.nflgame center.us.lite&hl=en_US&gl=US.

3.      Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendant in knowingly disclosing personally identifiable information—including a record of every video clip viewed by the user—to unrelated third parties.

4.      The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider."  18 U.S.C. § 2710.  "Personally identifiable information" ("PII") is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).

5.      Similarly, the RIVRPA prohibits "any person to reveal, transmit, publish, or disseminate in any manner, any records which would identify the names and address of individuals, with the titles or nature of video films … or the like, which they purchased, leased, rented, or borrowed, from libraries, book stores, video stores, … or any retailer or distributor of those products."  11 R.I. Gen. Laws § 11-18-32(a).

6.      The United States Congress passed the VPPA in 1988, seeking to confer onto consumers the power to "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers."  S. Rep. No. 100-599, at 8.  "The Act reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent."  *Id.*

7.      Defendant violated the VPPA and RIVRPA by knowingly transmitting Plaintiff's and the putative class's personally identifiable information to unrelated third parties.

## FACTUAL BACKGROUND

## I.      The VPPA And The RIVRPA

8.      The impetus for the VPPA stems from President Ronald Reagan's nomination of

Judge Robert Bork to the United States Supreme Court.  During the confirmation process, a movie rental store disclosed the nominee's rental history to the Washington City Paper, who then published that history.  Congress responded by passing the VPPA, with an eye toward the digital future.  As Senator Patrick Leahy, who introduced the Act, explained:

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home.  In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone.  I think that is wrong.

S. Rep. 100-599, at 5-6 (internal ellipses and brackets omitted).

9.      In 2012, Congress amended the VPPA, and in so doing, reiterated the Act's applicability to "so-called 'on-demand' cable services and Internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones."  S. Rep. 112-258, at 2.

10.      The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider."  18 U.S.C. § 2710(b)(1).  The VPPA defines personally identifiable information as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider."  18 U.S.C. § 2710(a)(3).  A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).

11.      Similar to the VPPA, the RIVPRA prohibits "any person to reveal, transmit, publish, or disseminate in any manner, any records which would identify the names and addresses of individuals, with the titles or nature of video films, records, cassettes, or the like, which they

purchased, leased, rented, or borrowed, from libraries, book stores, video stores, or record and cassette shops or any retailer or distributor of those products." 11 R.I. Gen. Laws § 11-18-32(a).

## II.      Setup And Use Of The NFL App

12.      Defendant develops, owns, and operates the NFL App.

13.      Consumers can download the NFL App for use on mobile devices through the Google Play Store or the Apple App Store. Following download, consumers that wish to use the NFL App to watch live football games in their respective regions must manually provide permission to the App to allow it to access their locations through the mobile device's GPS.

14.      At no point does request permission to share its users' location information or video viewing information with any third party. Nor does Defendant disclose this at any point to class members.

15.      Consumers can use the NFL App to view football highlight videos, live games, and game analyses.

## III.     Testing Reveals That Defendant Is Illegally Sharing Users' Video-Viewing Information With A Third Party

16.       In the Summer of 2021, Plaintiff's counsel retained a private research company to conduct a dynamic analysis of the NFL App, which revealed that Defendant transmits information sufficient to identify class members and the videos they watch to an unrelated third party, in violation of the VPPA and RIVPRA.

17.      Analysis of the source code for the NFL App reveals that Defendant incorporates multiple "application programming interfaces" ("APIs") into its App.

18.      APIs "enable[] companies to open up their applications' data and functionality to external third-party developers, business partners, and internal departments within their

companies."[2]  Google Analytics is an example.  When developers, like Defendant, integrate the Google Analytics API into their applications, Google will "create reports to answer questions like: How many daily active users has my Android app had in the last week?  How many page views has each of the top 10 page URLs for my site received in the last 28 days?"[3]  In exchange, Google retains and repurposes data the application transmits, which Google then uses to support other ventures, like targeted advertising.

19.    Defendant integrates the Anvato API, which is owned Google, into its App.  The Anvato API "allows its customers … to power live streams, edit videos in the cloud, insert ads and handle pay-per-view, TV Everywhere and subscription payments."[4]

//

//

//

//

//

//

//

//

//

//

---

[2] IBM CLOUD EDUCATION, APPLICATION PROGRAMMING INTERFACE (API),
https://www.ibm.com/cloud/learn/api

[3] GOOGLE ANALYTICS, ANALYTICS DATA API OVERVIEW,
https://developers.google.com/analytics/devguides/reporting/data/v1.

[4] ANVATO, ANVATO FEEDS API, https://dev.anvato.net/api/feeds#anvato-feeds-api.

20.     The dynamic analysis found that when a user enables location services, Defendant allows Google, through the Anvato API, to access a user's geolocation and advertising ID,[5] and unique video identifier of the video(s) viewed by the user:

| hostname | aaid | userid | contact | geolation | videoid | videoname | videomcp |
|---|---|---|---|---|---|---|---|
| api.onesignal.com | × | × | | × | | | |
| nfl.hb.omtrdc.net | | × | | | × | × | × |
| events.mapbox.com | | | | × | | | |
| sb.scorecardresearch.com | † | | | | × | × | |
| dpm.demdex.net | × | × | † | | | | |
| smetrics.nfl.com | × | × | † | | × | × | × |
| accounts.us1.gigya.com | | | × | | | | |
| mboxedge35.tt.omtrdc.net | × | × | † | | | | |
| impression.appsflyer.com | × | | | | | | |
| graph.facebook.com | × | | | | | | |
| tkx.mp.lura.live | × | | | × | | | × |
| cws.conviva.com | × | | | | × | | |
| control.kochava.com | × | × | | | | | |
| nflenterprises.tt.omtrdc.net | × | × | | | | | |

† Instead of sending value, sends MD5 or SHA256 hash of it

21.     "AAID" is a user's unique advertising ID.  An AAID can be sent to advertisers and other third parties which can use this unique ID to track the user's movements, habits, and usages of applications.[6]  Although advertising IDs are resettable, they must be manually reset by a user, and are otherwise persistent identifiers.

22.     "Geolatlon" is a user's geolocation.  Specifically, the analysis found that the Anvato API is receiving a user's "course geolocation," which is a user's precise geolocation with three

---

[5] An Advertising ID is a unique ID provided by Google Play, which allows advertisers the ability to track users across multiple applications and websites.  *See* GOOGLE, ADVERTISING ID, https://support.google.com/googleplay/android-developer/answer/6048248?hl=en#zippy=%2Cadvertising-id-violations%2Chow-to-opt-out-of-personalized-ads.

[6] Thomas Tamblyn, *You Can Effectively Track Anyone, Anywhere Just By The Adverts They Receive*, HUFFPOST, Oct. 19, 2017, https://www.huffingtonpost.co.uk/entry/using-just-1000-worth-of-mobile-adverts-you-can-effectively-track-anyone_uk_59e87ccbe4b0d0e4fe6d6be5.

decimal places or more (*i.e.*, within forty feet).[7]   In other words, this type of geolocation can be considered precise, as it provides street level accuracy.

23.     "Videomcp" refers to a Video MCP ID.  The MCP ID is a short string of numbers that links to a particular video name.  For instance, the analysis found that the MCP ID for the video "Everything You Need to Know About the 2021 NFL Season" was 1065895.

24.     "Tkx.mp.lura.live" is Anvato's video player.[8]   Anvato's video player allows it to identify which video was played (*i.e.*, the video title) using the MCP ID.[9]

25.     In summary, unbeknownst to its users, each time they view video clips, the NFL App sends a record of the transaction—along with an identifier for the video, the user's precise GPS coordinates and other identifiers associated with the user's device, such as its unique Advertising ID—to an unrelated third-party data analytics company (*i.e.*, Google through the Anvato API).

26.     Defendant partners with Google because its analytics services provide insights into the behaviors and demographics for the NFL App's user base.  This helps Defendant to, among other things, accurately target advertisements to its users.

27.     The reason Google is capable of developing a complete understanding of an individual's digital activities is because it collects an enormous amount of detailed information about a given consumer's online behavior (as well as unique identifiers associated with a user's devices) from a variety of sources.

---

[7] James R. Schmidt, Jr., BSME, *GPS Coordinates: How Many Decimal Places Do You Need?*, DJS ASSOCIATES, https://www.forensicdjs.com/blog/gps-coordinates-many-decimal-places-need/.

[8] WELCOME TO MCP, https://mcp.mp.lura.live/.

[9] QUICK START, PLAYING A VIDEO FROM MCP, https://dev.anvato.net/api/player#playing-a-video-from-mcp

28.     For instance, an Android app that transmits its host device's Advertising ID along with a record of user activity provides analytics companies with an intimate look at the different types of materials consumed by the individual.  This data may reveal, or help create inferences about, the person's political or religious affiliations, sexuality, or general reading and viewing preferences.

29.     Once Google links a device's Advertising ID with its owner, it can connect new information retrieved from Android apps—including the NFL App—with existing data in the person's profile (which was previously collected by Google from other sources).

30.     As Professor Douglas C. Schmidt of Vanderbilt University wrote, Google's "business model is to collect as much data about you as possible and cross-correlate it so they can try to link your online persona with your offline persona.  This tracking is just absolutely essential to their business.  'Surveillance capitalism' is a perfect phrase for it."[10]

31.     Given Google's omnipresence on the internet—through its ownership of the Android operating system, Google Play Store, Google Chrome, Google's search engine, and Google's advertising and analytics APIs, to name a few—Google is able to associate a user's Advertising ID with a corresponding "Google profile," and is able to, upon information and belief, use that aggregated information to identify a particular person.

## III.     Experience of Plaintiff Daniel Louth

32.     In 2018, Plaintiff downloaded the NFL App on his LG Stylo 6 Android phone. When Plaintiff set up the NFL App, he enabled location services.

---

[10] Lily Hay Newman, *The Privacy Battle to Save Google From Itself*, WIRED (Nov. 1, 2018), https://www.wired.com/story/google-privacy-data/; *see generally* SHOSHANA ZUBOFF, THE AGE OF SURVEILLANCE CAPITALISM: THE FIGHT FOR A HUMAN FUTURE AT THE NEW FRONTIER OF POWER (2019).

33.     Plaintiff used the NFL App until June 2021 in the state of Rhode Island.  During that time, he used the NFL App to watch football games and video clips.

34.     At all times relevant, Plaintiff never consented, agreed, or otherwise permitted the NFL App to disclose his PII to third parties.

35.     Likewise, Plaintiff has never been given the opportunity to prevent the NFL App from disclosing his PII to third parties.

36.     Nevertheless, each time Plaintiff viewed a video clip using the NFL App, Defendant disclosed his PII—in the form of the URL, title, and short descriptions of the videos he had watched, his unique Adverting ID, and his GPS coordinates—to the third party API Anvato, which is owned by Google.  Using this information, Google was able to identify Plaintiff and attribute his video viewing records to an individualized profile of Plaintiff in its databases.

## PARTIES

37.     Plaintiff Daniel Louth is, and has been at all relevant times, a resident of Hope Valley, Rhode Island and has an intent to remain there, and is therefore a domiciliary of Rhode Island.

38.     Defendant NFL Enterprise LLC is a Delaware corporation with its principal place of business at 280 Park Avenue New York, New York 10017.  Defendant develops, owns, and operates the NFL App, which is used throughout Rhode Island and the United States.

## JURISDICTION AND VENUE

39.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States (the VPPA).  This Court has supplemental jurisdiction over Plaintiff's RIVPRA claim pursuant to 28 U.S.C. § 1367 because it is "so related"

to Plaintiff's VPPA claim that it "form[s] part of the same case or controversy under Article III of the United States Constitution."

40. This Court has personal jurisdiction over Defendant because the NFL App collected and disseminated the personally identifiable information giving rise to this lawsuit in this District.

41. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District.

## CLASS ALLEGATIONS

42. **Class Definition:** Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in the United States who used the NFL App with location services enabled to watch videos and had their PII transmitted to a third party (the "Class").

43. Plaintiff also seeks to represent a subclass of similarly situated individuals, defined as all Rhode Island residents who used the NFL App with location services enabled to watch videos and had their PII transmitted to a third party (the "Subclass").

44. Collectively, the Class and the Subclass shall be known as the "Classes."

45. Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

46. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of members of the aforementioned Classes. However, given the popularity of Defendant's App, the number of persons within the Classes is believed to be so numerous that joinder of all members is impractical.

47. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case.

Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual members of the Classes include:

> (a) whether Defendant collected Plaintiff's and the Classes' PII;
>
> (b) whether Defendant unlawfully disclosed and continues to disclose its users' PII, including their video viewing records, in violation of the VPPA;
>
> (c) whether Defendant's disclosures were committed knowingly; and
>
> (d) whether Defendant disclosed Plaintiff's and the Classes' PII without consent.

48.     **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Classes because Plaintiff, like all members of the Classes, used the NFL App to watch videos, and had their PII collected and disclosed by Defendant.

49.     **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation, including litigation concerning the VPPA and its state-inspired offspring.  Plaintiff and his counsel are committed to vigorously prosecuting this class action.  Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Classes.  Neither Plaintiff nor his counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes.  Plaintiff has raised viable statutory claims or the type reasonably expected to be raised by members of the Classes, and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Classes, additional claims as may be appropriate, or to amend the definition of the Classes to address any steps that Defendant took.

50.     **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of

the claims of all members of the Classes is impracticable.  Even if every member of the Classes could afford to pursue individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes.  Plaintiff anticipates no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE VPPA,
### 18 U.S.C. § 2710, *et seq.*

51.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

52.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

53.     Defendant is a "video tape service provider" as defined by the VPPA because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), inasmuch as it provides video (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers via its NFL App.

54.     Plaintiff and class members are "consumers" as defined by the VPPA because he downloaded, installed, and watched videos using the NFL App.  18 U.S.C. § 2710(a)(1).  Under

- 12 -

the VPPA, this means that he was a "subscriber" of "goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1); *see also Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016).

55.    Plaintiff and class members viewed video clips using the App.  On information and belief, during these occasions the App disclosed Plaintiff's and class members' PII—including the device's Advertising ID, GPS coordinates, and records of the videos that they viewed—to third party analytics company Google.

56.    The NFL App's transmissions of Plaintiff and class members' PII to Google constitutes "knowing[] disclosures" of their "personally identifiable information" to a person as proscribed by the VPPA.  18 U.S.C. § 2710(a)(1).

57.    Under the VPPA, the term "personally identifiable information" "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).  The definition's usage of the word "includes" means that a more expansive reading of the term was expressly contemplated.

58.    The information disclosed by the NFL App constitutes "personally identifiable information" in this context because it allows Google to identify Plaintiff and class members. *Yershov*, 820 F.3d at 486.

59.    Plaintiff and class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties.

60.    Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA.  In particular, the NFL App's disclosures to Google were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership."  18 U.S.C. § 2710(a)(2).

- 13 -

61.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with VPPA's requirements for protecting a consumer's PII; (3) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c); and (4) reasonable attorneys' fees and costs and other litigation expenses.

## COUNT II
## VIOLATION OF THE RIVRPA,
## R.I. Gen. Laws § 11-18-32

62.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63.     Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against Defendant.

64.     Defendant, as the owner and operator of the NFL App, is a "distributor" of "video films … or the like."  *See* R.I. Gen. Laws § 11-18-32(a).

65.     By downloading the NFL App and watching videos, is an "individual" who "purchased, leased, rented, or borrowed" a "video film" or the like from Defendant.  *See id.*

66.     Plaintiff and subclass members viewed video clips using the App.  On information and belief, during these occasions the App disclosed their PII—including the device's Advertising ID, GPS coordinates, and records of the videos that they viewed—to third party analytics company Google.

67.     The PII that Defendant disclosed—Advertising ID, GPS coordinates, and records of the videos they viewed—is sufficient to identify their names and addresses.  *See id.*

68.      Plaintiff and the members of the Subclass never consented to Defendant disclosing their video viewing history to third parties.

69.     Defendant did not disclose Plaintiff and class members' PII incident to the normal course of its work or as part of lawful compulsion.  *See id.*

70.     By disclosing their PII and video viewing history, Defendant violated the Plaintiff's and the Subclass's statutorily-protected right to privacy in their video viewing habits.  *See id.*

71.     Further, because subclass members' video-viewing history has economic value to Defendant, and because Defendant was obligated to comply with the RIVRPA, Defendant's unlawful disclosure of Plaintiff  and the other Subclass members' PII and video viewing history deprived Plaintiff and the other Subclass members of the full value of their video viewing history.

72.     Because Plaintiff and the other Subclass members ascribe monetary value to the privacy of their video viewing information, Defendant's unlawful rental, exchange, and/or other disclosure caused them economic harm.

73.     In addition, Plaintiff would not have downloaded the NFL App had he been adequately informed of Defendant's disclosure practices.   By failing to do so, Defendant economically harmed Plaintiff and subclass members.

74.     As a result of Defendant's unlawful disclosure of Plaintiff and subclass members' PII and video viewing history, Plaintiff and the members of the Subclass have suffered privacy and economic injuries.  On behalf of himself and the Subclass, Plaintiff seeks (1) an injunction requiring Defendant to obtain consent from Rhode Island customers prior to the disclosures of their video viewing information as required by the RIVRPA; (2) actual damages or $250.00, whichever is greater, for each violation, per Subclass member pursuant to R.I. Gen. Laws § 11-18-32(d); and (3) costs and reasonably attorneys' fees pursuant to R.I. Gen. Laws § 11-18-32(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Daniel seeks a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a) For an order certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

(d) An award of statutory damages to the extent available;

(e) For punitive damages, as warranted, in an amount to be determined at trial;

(f) For prejudgment interest on all amounts awarded;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: October 5, 2021     Respectfully submitted,

**MCINTYRE TATE LLP**

By: */s/ Stephen M. Prignano*
   Stephen M. Prignano (3649)

50 Park Row West, Suite 109

Providence, RI 02903
Tel: (401) 351-7700
Fax: (401) 331-6095
E-Mail: sprignano@mcintyretate.com

*Local Counsel for Plaintiff and the
Putative Classes*

**BURSOR & FISHER, P.A.**
Yitzchak Kopel*
Max S. Roberts*
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: ykopel@bursor.com
           mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly*
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Tel: (305) 330-5512
Fax: (305) 679-9006
E-Mail:  creilly@bursor.com

*\*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff and the Putative Classes*