## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DANIEL LOUTH, individually and on behalf of all other similarly situated, | |
| Plaintiff, | |
| v. | C.A. No. 1:21-cv-00405 |
| NFL ENTERPRISES LLC, | |
| Defendant. | |

## NFL ENTERPRISES LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

PLAINTIFF'S COMPLAINT .......................................................................................... 4

ARGUMENT ..................................................................................................................... 5

I.   The Court Should Dismiss Plaintiff's VPPA Claim for Failure to State a Claim.................. 5

    A.   Plaintiff Does Not Allege Disclosure of "Personally Identifiable Information." ........... 7

    B.   Plaintiff Does Not Allege a "Knowing" Disclosure By NFL Enterprises. ................... 10

    C.   The NFL App's Alleged Disclosures to the Anvato API Squarely Fall Within the VPPA's "Ordinary Course of Business" Exception. .................................................... 12

II.  Plaintiff Also Fails to State a Claim Under R.I. Gen. Laws § 11-18-32. ............................ 13

    A.   Plaintiff Does Not Allege NFL Enterprises Disclosed His "Name and Address," Or the Titles or Nature of Videos ........................................................................................ 14

    B.   Plaintiff Does Not Allege He "Purchased, Leased, Rented, or Borrowed" a "Video Film or the Like from" NFL Enterprises. ............................................................................ 17

    CONCLUSION ................................................................................................................ 19

Defendant, NFL Enterprises LLC hereby files this memorandum of law in support of its motion, under Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's Complaint.

## INTRODUCTION

Plaintiff Daniel Louth sued NFL Enterprises LLC ("NFL Enterprises") alleging violations of federal and state privacy statutes related to his alleged use of the NFL smartphone app.  Plaintiff seeks to turn ordinary, back-end app functions used to provide video content requested by users into the basis for a nationwide class action under the Video Privacy Protection Act ("VPPA") and a statewide class action under Rhode Island General Laws §11-18-32.  As shown below, Plaintiff's pleading is an exercise in conjecture and overreach.  The Court should dismiss Plaintiff's Complaint, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

As an initial matter, there can be no liability under the VPPA without a video tape service provider's knowing disclosure of personally identifiable information to a third party, in a manner that falls outside of the VPPA's permitted exceptions.  18 U.S.C. § 2710.  The VPPA's enactment stems from Judge Robert H. Bork's 1987 nomination to the United States Supreme Court, during which a Washington City Paper reporter "walked into Potomac Video and asked the manager on duty whether he could have a peek at Bork's rental history . . . . [and] walked out with a photocopy revealing the 146 tapes the judge had checked out in the past two years" (which the reporter subsequently published in a profile titled "The Bork Tapes").  Andrea Peterson, *How Washington's Last Remaining Video Rental Store Changed the Course of Privacy Law*, WASHINGTON POST (Apr. 28, 2014).  In the wake of this event, Congress enacted the VPPA to prohibit "knowing[]" disclosure of "personally identifiable information" that "identifies a person as having requested or obtained specific video materials," 18 U.S.C. §§ 2710(a)(3), (b)(1), except for disclosures

"incident to the ordinary course of business," *id*. §2710(b)(2)(E), which the statute defines to include, *inter alia*, "order fulfillment" and "request processing." *Id*. § 2710(a)(2).

As Plaintiff concedes, NFL Enterprises uses a third-party application programming interface ("the Anvato API") to provide video streaming and editing services for the NFL app. Compl. ¶ 19. These services enable users, like Plaintiff, "to watch football games and video clips," *id*. ¶ 33, and they represent the type of "order fulfillment" and "request processing" services that the VPPA expressly exempts. Faced with this conclusion, Plaintiff makes multiple speculative and conclusory leaps in the Complaint in a futile effort to bring his claim within the statute. First, Plaintiff alleges *without any factual basis* that *Google* takes Anvato's API data, and cross-references it with other information that Google allegedly possesses, to identify and match particular individuals to particular video content and analyze their video-viewing behavior. Plaintiff's speculation rests solely upon the fact that the Anvato API is owned by Google. Second, Plaintiff summarily asserts, again without any supporting facts, that NFL Enterprises *knows* that Google is performing this alleged analysis using anonymous device data transmitted to the Anvato API to provide app-related video services. However, no such chain of events by Google, much less scienter about them by NFL Enterprises, is plausibly supported by any well-pled facts in the Complaint. Plaintiff thus fails to state a claim under the VPPA, and his claim should be dismissed.

Plaintiff's state law claim under Rhode Island General Laws §11-18-32, a criminal statute,[1] also fails on the face of the Complaint. The scope of that statute is narrow—prohibiting *only* disclosures that identify the "names and addresses of individuals, with the titles or nature of the

---

[1] In his Complaint, Plaintiff refers to R.I. Gen. Laws §11-18-32 as the Rhode Island Video, Audio, and Publications Rentals Privacy Act ("RIVRPA"). This statute is part of Title 11 which is titled "Criminal Offenses." Chapter 11-18 is titled "Fraud and False Dealing" and the public law which established the crime is titled: "An Act Relating to Criminal Offenses–Unlawful Dissemination of Records." *See* P.L. 1988, ch. 94, § 1.

video films . . . or the like" that the individual "purchased, leased, rented or borrowed."  Plaintiff does not and cannot plead these prerequisites for a §11-18-32 claim.  To start, the Complaint does not allege that Plaintiff ever provided his name and address to NFL Enterprises, much less that NFL Enterprises then disclosed his name and address to the Anvato API (or Google).  Instead, Plaintiff alleges that the device-related data elements transmitted to the Anvato API for order fulfillment purposes are "*sufficient* to identify [users'] names and addresses."  Compl. ¶ 67 (emphasis added).  This speculative allegation fails because "names and addresses," as used in the statute, must be given their plain and ordinary meaning under Rhode Island law.  Because the Complaint does not allege that Plaintiff provided his name and address to NFL Enterprises, or that NFL Enterprises knew and provided Plaintiff's name and address to anyone else, his claim under §11-18-32 should be dismissed.

Moreover, the §11-18-32 claim fails for a separate reason:  Plaintiff does not allege that he paid money for, or otherwise borrowed and returned, any content he watched on the NFL app.  The Complaint's summary legal conclusion that by downloading (for free) "the NFL App and watching videos, [Plaintiff] is an 'individual' who 'purchased, leased, rented, or borrowed' a 'video film' or the like from" NFL Enterprises, Compl. ¶ 65, merely parrots this statutory element, which is insufficient to satisfy Federal Rule of Civil Procedure 8.  Nor could Plaintiff ever meet this pleading standard, because he neither "purchased, leased, rented or borrowed," within the ordinary meaning of those terms, any NFL app content.  Even if those words were viewed as ambiguous (which they are not), courts must adopt the most narrow construction of criminal statutes under the rule of lenity.  Either way, Plaintiff's state law claim should be dismissed.

For the foregoing reasons, as discussed further below, the Court should dismiss, with prejudice, Plaintiff's Complaint.

## PLAINTIFF'S COMPLAINT

Plaintiff alleges he downloaded the NFL app in 2018 on an Android phone "to watch football games and video clips." Compl. ¶¶ 32-33. Plaintiff enabled location services on his mobile phone when he "set up" the NFL app. *Id*. ¶ 32. Plaintiff does *not* allege paying any money to download or use the NFL app. He instead enjoyed the NFL app for free, which he used "until June 2021." *Id*. ¶ 33. Plaintiff seeks to represent putative nationwide and statewide classes of NFL app users on claims he asserts under the VPPA and §11-18-32, respectively. *Id*. ¶¶ 42-43.

According to the Complaint, the NFL app "incorporates multiple 'application programming interfaces' ('APIs')" to enable the functionality of the app. *Id*. ¶¶ 17-18. The Complaint's allegations target the API provided by Anvato, which "allows its customers [like NFL Enterprises] . . . to power live streams, edit videos in the cloud, insert ads and handle pay-per-view, TV Everywhere, and subscription payments." *Id*. ¶ 19. Plaintiff alleges that the NFL app transmits an advertising ID, coarse geolocation data,[2] and a string of numbers known as a Video MCP ID, from a user's device to the Anvato API. *Id*. ¶¶ 20-24. Plaintiff does not allege that the Anvato API operates any differently in the NFL app than it does for other Anvato customers.

However, Plaintiff speculates that the owner of the Anvato API, Google, is "able" to match the device-related data elements transmitted to the Anvato API with other information that Google purportedly possesses, to identify users and the videos they accessed on the NFL app. *Id.* ¶¶ 25, 36. Plaintiff does not plead that Google, in fact, has used the Anvato API data in this manner.

Plaintiff also alleges that Google offers its own Analytics API, *id.* ¶ 18, but Plaintiff does not allege that the NFL app actually integrates Google's Analytics API—nor could he do so.

---

[2] Plaintiff uses the term "course" geolocation. Compl. ¶ 22. The correct term, "coarse" geolocation, will be used in this brief.

Although Plaintiff vaguely asserts that NFL Enterprises "partners with Google" because of its analytics services, *id.* ¶ 26, Plaintiff pleads no facts to infer that NFL Enterprises contracts for or receives any analytics services from Google—nor could he do so.

In connection with his claim under R.I. Gen. Law §11-18-32, Plaintiff fails to allege that he ever provided his name and address to NFL Enterprises, much less that his name and address were provided by NFL Enterprises to any third party. Further, Plaintiff does not plead facts to infer that Google actually used Anvato API data to identify Plaintiff's name and address. Finally, Plaintiff does not plead he paid money to use the NFL app, or that he borrowed and returned any content he viewed on the app.

## ARGUMENT

### I.   The Court Should Dismiss Plaintiff's VPPA Claim for Failure to State a Claim.

Under Rule 12(b)(6), the Court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The Court assesses the sufficiency of the plaintiff's factual allegations in a two-step process. *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 7, 11-13 (1st Cir. 2011). "Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). "Step two: take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they *plausibly* narrate a claim for relief." *Id.* (emphasis added). Plausibility requires "something more than merely possible." *Id.* at 55. Although the Court draws all reasonable inferences in the pleader's favor, it "need not accept every imaginable inference." *See id.* at 57 (discussing *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514-15 (1st Cir. 1988)). Dismissal is appropriate if the "facts" as alleged do not "possess enough heft to show that plaintiff is entitled to relief" or are "so threadbare or speculative that they fail to cross the line between the conclusory

and the factual." *Ruiz Rivera v. Pfizer Pharm.*, *LLC*, 521 F.3d 76, 84 (1st Cir. 2008); *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012) (internal citation omitted).

To state a claim under the VPPA, Plaintiff must establish that NFL Enterprises acted as a video tape service provider and *knowingly* disclosed his *personally identifiable information* to a third party in a manner that falls *outside of one of the VPPA's express statutory exceptions*. *See generally* 18 U.S.C. § 2710. Plaintiff fails to allege sufficient or plausible facts to support any of these independent requirements.[3] Specifically, the Complaint fails to plausibly allege that NFL Enterprises discloses "personally identifiable information" through the Anvato API, or that such data was disclosed "knowingly" by NFL Enterprises for any purpose other than for routine "order fulfillment" and "request processing" through Anvato's video service. Each is a requisite element under the VPPA. *See id.* §§ 2710(a)(3), (b)(1); *see also id.* §§ 2710(a)(2), (b)(2)(E). Plaintiff already acknowledges that the Anvato API provides video streaming and editing services for the NFL app, Compl. ¶ 19, which allows NFL Enterprises to process requests and fulfill orders from app users requesting live video content and other services. Accordingly, the device-related data allegedly transmitted to the Anvato API is "incident to the ordinary course of business." *Id.* § 2710(b)(2)(E). The Complaint speculates, without supporting facts, that Google uses Anvato API data to identify and match individual users with their video-viewing content. The Complaint also summarily asserts, without supporting facts, that NFL Enterprises is aware of such Google activity. As discussed in greater detail below, Plaintiff's VPPA claim should be dismissed for multiple reasons.

---

[3] NFL Enterprises reserves the right to contest that it is a "video tape service provider" within the meaning of the VPPA, and that Plaintiff is a "consumer" within the meaning of the VPPA, in the event the Complaint is not dismissed.

### A.  Plaintiff Does Not Allege Disclosure of "Personally Identifiable Information."

The VPPA covers only the disclosure of personally identifiable information ("PII").  As expressly defined in the statute, PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider[.]" *Id.* § 2710(a)(3).  In *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016), the First Circuit observed that the statutory definition is "awkward and unclear." However, the Court determined in that case that the plaintiff had sufficiently pled the defendant disclosed information to an analytic services provider that was "reasonably and foreseeably likely to reveal" the videos that the plaintiff had obtained from the defendant.  *Id.*  The First Circuit reached this result because "according to the complaint, when [the defendant] makes such a disclosure to Adobe, it knows that Adobe has the 'game program,' so to speak, allowing it to link the GPS address and device identifier information to a certain person by name, address, phone number, and more."  *Id.*

The *Yershov* court was careful to limit the scope of its decision, emphasizing it was holding "only that the transaction described in [that case]" passed muster at the pleadings stage.  *Id.* at 489. The First Circuit specifically cautioned "there is certainly a point at which the linkage of information to identity becomes too uncertain, or too dependent on too much yet-to-be-done, or unforeseeable detective work" to state a VPPA claim.  *Id.* at 486.[4]  The instant Complaint shows that the First Circuit's concerns were well-founded.

After *Yershov*, other appellate courts similarly warned against expansive interpretations of PII under the VPPA.  These courts interpreted PII as limited to "the kind of information that would

---

[4] Ultimately, the *Yershov* case was dismissed with prejudice by joint stipulation stating that "Plaintiff lacks sufficient evidence to support his allegation that Defendant violated the [VPPA] by 'disclosing his PII,'" as alleged.  *Yershov*, Case No. 1:14-cv-13112-FDS (D. Mass Mar. 27, 2017), Dkt. 83.

readily permit an *ordinary person* to identify a specific individual's video-watching behavior."
*See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 290 (3d Cir. 2016) (emphasis added)
(observing that "[we] do not think the Video Privacy Protection Act sweeps quite so broadly" to
trigger liability if a company discloses IP addresses, as then "the disclosure of an IP address to any
Internet company with registered users might trigger liability under the Act"); *Eichenberger v.
ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) (holding that a device serial number and the names
of videos watched do not constitute PII because "an ordinary person could not use the information
that Defendant allegedly disclosed to identify an individual").

Plaintiff's Complaint is the kind of inadequate pleading foreshadowed by the First Circuit
in *Yershov,* and discussed by the Third and Ninth Circuits.  The Complaint requires this Court to
conduct the very "yet-to-be-done, or unforeseeable detective work" proscribed by the First Circuit,
to infer that anonymous device Ad ID, coarse geolocation, and the short string of numbers known
as Video MCP IDs allegedly transmitted by the NFL app to the Anvato API for request processing
and order fulfillment, is separately being linked by Google with other information to identify NFL
app users and match them with specific video materials they watch.

Unlike the plaintiff in *Yershov*, Plaintiff Louth pleads no facts—only speculation and
unsupported conclusions—to imply that NFL app data is being used by Google for analytics
purposes.  And unlike Adobe, the Anvato API provides "live stream" and other "video" services
for the NFL app to operate as requested by its users, including Plaintiff.  Compl. ¶ 19.  And even
if Google were to access the device data through the Anvato API, the alleged data is materially
different from the data elements considered in *Yershov*, and unlikely to reveal specific users and
the specific video materials that they accessed.  In *Yershov*, the data elements shared actually
included "the title of the video viewed," 820 F.3d at 484, as well as persistent advertising IDs, and

more precise geolocation data (approximately "five to eight meters," which equates to 16-26 feet). *Id.* at 486 n.3.   In contrast, Plaintiff Louth admits that the NFL app transmits only an anonymized "string of numbers," not actual video titles, *id.* ¶ 23, that the Advertising IDs shared through the Anvato API are "resettable" by users, rather than persistent, Compl. ¶ 21, and that the coarse geolocation data allegedly shared here is roughly half as precise than the geolocation data discussed in *Yershov*.  *Id.* ¶ 22.

In his pleading, Plaintiff asks the Court to infer too much from speculative hypotheticals: (1) that, although the NFL app provides data to the Anvato API for video services, Google must be accessing this data for its analytic use; (2) that, because it provides analytics services, Google is *capable* of linking Ad IDs to specific, individual user profiles maintained by Google, and therefore it must be doing so; and (3) that the Anvato API is *capable* of linking the short string of numbers that constitute Video MCP IDs to a specific video title, and, again, it must be doing so. *See* Compl. ¶ 24 ("Anvato's video player *allows* it to identify which video was played (i.e., the video title) using the MCP ID") (emphasis added); *id.* ¶ 31 (alleging "Given Google's omnipresence on the internet . . . [it] is *able* to associate a user's Advertising ID with a corresponding 'Google profile,' *and is able to, upon information and belief*, use that aggregated information to identify a particular person") (emphasis added).  As *Yershov* warned, Plaintiff's allegations leave "too much yet-to-be-done" to permit any reasonable inference that NFL Enterprises discloses PII, as that term is defined in the VPPA.  *See* 18 U.S.C. § 2710(a)(3) (defining "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services").

Lacking sufficient facts, Plaintiff invokes the specter of "surveillance capitalism" to paper over his inadequate pleading.   Compl. ¶¶ 30-31.   In the end, his claim turns on treating the

9

disclosure of nameless device data to a video streaming service provider as the equivalent of disclosing PII, simply because that streaming service provider is owned by Google.  But courts elsewhere have rejected such speculative pleading based on a recipient's *hypothetical* ability to "reverse engineer" non-identifiable data disclosed to it.  *See, e.g.*, *In re Nickelodeon*, 827 F.3d at 290 (finding that the "allegation that Google will assemble otherwise anonymous pieces of data to unmask the identity of individual children is, at least with respect to the kind of identifiers at issue [in that case, an IP address], simply too hypothetical to support liability under the Video Privacy Protection Act"); *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 181 (S.D.N.Y. 2015) (finding that Disney did not disclose PII when it disclosed a hashed Roku serial number and a record of video clips to Adobe even where Adobe had the "potential, however remote, . . . to 'reverse engineer'" that data).

In sum, Plaintiff's pleading reflects all the deficiencies that the First Circuit made clear (in *Yershov*) will fail to state a claim for disclosure of PII under the VPPA.

### B.      Plaintiff Does Not Allege a "Knowing" Disclosure By NFL Enterprises.

Even if PII were at issue, the VPPA regulates only a video tape service provider "who *knowingly* discloses, to any person, personally identifiable information concerning the consumer. . . ." 18 U.S.C. § 2710 (b)(1) (emphasis added).  Plaintiff's mere recitation of this statutory element in the Complaint (¶ 56) deserves no weight.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

After conducting a careful analysis of the VPPA's "knowledge" element, another court concluded that "a plaintiff must prove that the video-service provider *actually knew* that it was disclosing:  1) a user's identity; 2) the identity of the video material; and 3) the connection between the two—i.e., that the given user had 'requested or obtained' the given video material."  *See In re*

*Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) (emphasis added).  Here, Plaintiff fails to allege any facts to infer that NFL Enterprises actually *knows* that by transmitting non-identifiable device data and a string of numbers constituting a Video MCP ID to the Anvato API for video streaming services, Google can, and does, access such data and combine it with other information purportedly in its possession, to determine Plaintiff's identity, the specific identity of the video material, and the connection between the two.

Although the Complaint loosely asserts that the NFL "partners with Google," Plaintiff does *not* allege that the NFL app incorporates the Google Analytics API or otherwise uses Google's analytic services.  Nor could Plaintiff so allege.  In fact, the "dynamic analysis" conducted by "a private research company" retained by Plaintiff's counsel, which is referenced in the Complaint, does *not* list the Google Analytics API among the "hostnames" that receive NFL app data.  Compl. ¶¶ 16, 20 (displaying analysis results).

While not required to rule in favor of NFL Enterprises, it bears mention that the very Anvato API webpage cited in the Complaint contains a hyperlink to the Google Cloud Terms of Service.  *Id.* ¶ 19, n. 4.[5]  Those Terms limit Google's access to and use of API data, stating that "Google will only access or use Customer Data to provide the Services and [technical support service] to Customer or as otherwise instructed by Customer and will not use it for any other Google products, services, or advertising."  Google Cloud Terms of Service ¶ 5.2.  Plaintiff makes

---

[5] The Court may consider these website pages because they are "sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).  Plaintiff incorporated by reference the Anvato website into his Complaint when he twice cited it and quoted it in support of his claims.  *See Garcia v. Apple Seven Servs. San Diego, Inc*., 2021 WL 3725921, at *2 (S.D. Cal. Aug. 20, 2021) (considering screenshots of website under doctrine of incorporation where the complaint cited and quoted the website in multiple places); *Murawski v. Pataki*, 514 F. Supp. 2d 577, 589 (S.D.N.Y. 2007) (considering copy of website page in deciding motion to dismiss where "plaintiff relies on the statement in his Complaint and the statement is integral to plaintiff's action").  In short, the Complaint "relies explicitly on" the Anvato website.  *Orozco v. Fresh Direct, LLC*, 2016 WL 5416510, at *1 & n.1 (S.D.N.Y. Sept. 27, 2016) (considering entire website in deciding motion to dismiss where complaint explicitly relied on it).

no allegation that NFL Enterprises otherwise "instructed" Google to use Anvato API data for analytics purposes, and he offers no explanation for why NFL Enterprises would have any reason to expect that Google allegedly violates its own Cloud Terms of Service.

In sum, Plaintiff has not alleged facts to indicate that NFL Enterprises "actually knew," *In re Hulu*, 86 F. Supp. 3d at 1097, that anonymous device data transmitted to the Anvato API to fulfill video requests is (allegedly) being used by Google to identify and match users with the videos they viewed.  For this additional reason, the VPPA claim should be dismissed.

### C.    The NFL App's Alleged Disclosures to the Anvato API Squarely Fall Within the VPPA's "Ordinary Course of Business" Exception.

Even when the VPPA applies, disclosures of PII "incident to the ordinary course of business" are permitted under 18 U.S.C. § 2710(b)(2)(E).  The VPPA defines the ordinary course of business to include "order fulfillment" and "request processing."  *Id*. § 2710(a)(2).  Both the Seventh and Ninth Circuits have observed that the VPPA's legislative history shows "Congress' awareness of the unremarkable fact that no business is an island and that video tape services providers, like many other businesses, 'may use third parties in their business operations'. . . . The functions performed by these third parties fall within the definition of 'order fulfillment' or 'request processing.'"  *See Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) (citing S. Rep. No. 100-599 at 14); *see also Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 624-26 (7th Cir. 2014) (holding that Redbox's disclosure of customers' PII to Stream Global Services, for the latter to respond to customer service requests, fell within the ordinary course of business exception).

NFL Enterprises' alleged disclosures to the Anvato API fall squarely within the scope of permissible order fulfillment and request processing activities, based on Plaintiff's own pleading. The Complaint expressly acknowledges that the Anvato API is used "to power live streams, edit

videos in the cloud, insert ads and handle pay-per-view, TV Everywhere, and subscription payments." Compl. ¶ 19.[6]  For an app, such as the NFL app, that provides users with video content, these content management functions—which enable powering live streams with relevant ad breaks and editing videos for users to view—are part of order fulfillment.  Indeed, ad-supported video services need the capability to insert ads to provide video content for free to users.  These type of third-party services are materially different from those at issue in *Yershov*, where Adobe allegedly "offer[ed] data analytics and online marketing services to its clients by collecting information about consumers and their online behavior," and it was in connection with such services that the defendant allegedly disclosed the data.  *Yershov*, 820 F.3d at 484.

    In short, because Plaintiff concedes that Anvato is a provider of video and other support services for apps, NFL Enterprises' alleged disclosures to the Anvato API fall squarely within the ordinary course of business exception of the VPPA, and are therefore exempt under the VPPA.

## II.    Plaintiff Also Fails to State a Claim Under R.I. Gen. Laws § 11-18-32.

    Unlike the VPPA, R.I. Gen. Laws § 11-18-32 is a criminal statute that prohibits the disclosure of information that "would identify the *names* and *addresses* of the individuals, with the *titles or nature of video films* . . . or the like" that they "*purchased, leased, rented, or borrowed*."  R.I. Gen. Laws § 11-18-32 (emphases added).  The express scope of § 11-18-32 is narrow, limiting culpable conduct to the disclosure of "names and addresses" only.  The only other court to have analyzed this provision held that disclosures to a defendant allegedly "capable" of identifying names and addresses were insufficient to state a claim.  *Wheaton v. Apple, Inc.*, 2019

---

[6] "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding."  *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir. 1992) (internal quotation omitted); *see also N. Am. Cath. Educ. Programming Found., Inc. v. Sprint Corp.*, 2006 WL 1207670, at *7 (D.R.I. May 2, 2006) ("Plaintiff is bound by the judicial admissions in its Complaint and[], therefore, the allegations in the Complaint control.").

WL 5536214, at *5 (N.D. Cal. Oct. 25, 2019) (dismissing § 11-18-32 claim). This Court similarly should dismiss the Plaintiff's claim, which fails to plead any disclosure of names and addresses to anyone. Moreover, Plaintiff does not allege that he "purchased, leased, rented, or borrowed" any content on the NFL app, a separate element for bringing any claim under § 11-18-32. For each of these reasons, Plaintiff's state law claim should be dismissed with prejudice.

### A. Plaintiff Does Not Allege NFL Enterprises Disclosed His "Name and Address," Or the Titles or Nature of Videos.

The Court should dismiss the Plaintiff's claim under R.I. Gen. Laws § 11-18-32 because there is no allegation in the Complaint that NFL Enterprises collected or knew Plaintiff's "name and address" in the first instance, much less that NFL Enterprises disclosed his name and address to the Anvato API. Rather, Plaintiff summarily asserts, without factual enhancement, that "[t]he PII that Defendant disclosed–Advertising ID, GPS coordinates, and records of the videos they viewed–is *sufficient* to identify their names and addresses." Compl. ¶ 67 (emphasis added). In the only other case analyzing the Rhode Island statute in the privacy context, another court dismissed a claim (brought by the same law firm representing Plaintiff Louth) against Apple for alleged disclosures of personal listening information to third parties. In *Wheaton v. Apple,* the plaintiffs similarly alleged that "developers could extract customers' iTunes music libraries metadata and link customers' individual identities to the data," and that Apple "allowed developers to readily access customers' 'tokens', which could be associated with personal identifying information." 2019 WL 5536214 at *1. The court in *Wheaton* held that § 11-18-32 "only imposes liability on Apple if it discloses a customer's name and address with their music selection information." *Id.* at *4. The *Wheaton* plaintiffs' allegation that "tokens 'are *capable* of association with uniquely identifying information pertaining to individual users'" was insufficient to state a claim under the Rhode Island statute. *Id*. at *5 (emphasis added).

This Court should hold the same because Plaintiff merely speculates about the theoretical ability of Google to associate device data transmitted to the Anvato API with Plaintiff's identity and videos. *See* Compl. ¶ 36. Plaintiff's conclusory allegation in paragraph 67—which concedes that user names and addresses themselves are *not* disclosed—falls well short of satisfying this threshold requirement for stating a claim under the Rhode Island criminal statute. *See Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim).

Separately, Plaintiff also has not alleged facts to raise a reasonable inference that the NFL app discloses the titles or nature of Plaintiff's videos, another necessary element for liability under § 11-18-32. Plaintiff merely alleges that the NFL app provides Video MCP IDs (which are a short string of numbers) to Anvato's video player, and then he summarily asserts without factual support that the Anvato player is *capable* of identifying the specific videos that a user played using the Video MCP ID. Compl. ¶¶ 23-24 (player "allows" Anvato to identify "which video was played"). Plaintiff does not allege that Anvato (or Google) has actually linked Video MCP IDs to particular video titles and particular individuals. As with Plaintiff's VPPA claim, Plaintiff is asking the Court to credit as fact what is only his speculation: that if Anvato is capable of linking MCP IDs to video titles, and Google is capable of linking those video titles to specific individuals, then they both must be doing so. *See supra* Section II.A.

Plaintiff attempts to equate R.I. Gen. Laws § 11-18-32(a) to the VPPA—even calling the Rhode Island law the "Rhode Island Video, Audio and Publications Rentals Privacy Act ("RIVPRA")." But this is unavailing. R.I. Gen. Laws § 11-18-32(a) is a narrow criminal statute that covers only the disclosure of "names and addresses" with the titles or nature of videos. The

Rhode Island General Assembly knows how to reference federal statutes when it wants a statute to be applied consistent with federal law.  *Saul v. Cannon*, 1979 WL 196043, *3 (R.I. Super. Ct. July 16, 1979) ("Had the legislature wanted to rely on the federal statute (and decisions rendered thereunder) it would have said so.  In other Rhode Island statutes which have been based on a federal statute, the legislature has specifically indicated that reference should be made to federal case law in interpreting the statute.").  For example, in the Rhode Island Access to Public Records Act, the General Assembly specifically excluded from its definition of "public record" the "[p]ersonnel and other *personal individually identifiable* records otherwise deemed confidential by federal or state law or regulation, or the disclosure of which would constitute a clearly unwarranted invasion of personal privacy pursuant to 5 U.S.C. § 552 et seq."  R.I. Gen. Laws § 38-2-2(4)(A)(I)(b) (emphasis added); *see also* Rhode Island Unfair and Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-3 ("It is the intent of the legislature that in construing §§ 6-13.1-1 and 6-13.1-2 due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to § 5(a) of the Federal Trade Commission Act. 15 U.S.C. § 45(a)(1), as from time to time amended.").  In contrast, here, R.I. Gen. Laws § 11-18-32 includes no reference to the VPPA, and so the former was not meant to informed by interpretation of the latter.

**B.      Plaintiff Does Not Allege He "Purchased, Leased, Rented, or Borrowed" a "Video Film or the Like from" NFL Enterprises.**

The Court should dismiss Plaintiff's claim under R.I. Gen. Laws § 11-18-32 for the additional reason that he did not purchase, lease, rent, or borrow a video film or the like from NFL Enterprises, which is a separate requirement for bringing any claim under this statute. The Complaint includes only a conclusory allegation that "[b]y downloading the NFL App and watching videos, [Plaintiff] is an 'individual' who 'purchased, leased, rented or borrowed' a 'video film' or the like from Defendant." Compl. ¶ 65. The Rhode Island Supreme Court has consistently held that when the words of a statute are unambiguous, the words should be given their plain and ordinary meaning. *See State v. LeFebvre*, 198 A.3d 521, 524 (R.I. 2019) ("When the statute expresses a clear and unambiguous meaning, the task of interpretation is at an end and this Court will apply the plain and ordinary meaning of the words set forth in the statute.") (citations and alterations omitted); *Planned Env'ts Mgm't Corp. v. Robert*, 966 A.2d 117, 121 (R.I. 2009) ("[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings") (citations omitted).

Plaintiff does not allege that he purchased, leased or rented—or paid any money to use— the NFL app. Giving those words their plain and ordinary meaning, Plaintiff clearly did not purchase, lease or rent any video on the NFL app. In *Yershov*, the First Circuit stated that the plain meaning of "purchaser" and "renter" requires "some sort of monetary payment." 820 F.3d at 487. Although the element of payment is not required for a "subscriber," that particular term is *not* included in R.I. Gen. Laws § 11-18-32.

Similarly, the plain and ordinary meaning of "borrowing" explicitly requires an intention to return the item. *See Borrow*, Oxford English Reference Dictionary (2d ed. 1996) (defining

17

borrow as to "acquire temporarily with the promise or intention of returning it"); *Borrow*, Merriam-Webster Dictionary (11th ed. 2019) ("to take or receive (something) temporarily and with intent to return").  Plaintiff does not allege he obtained video content on the NFL app with the intention of returning it, much less that he has actually done so.  Plaintiff acknowledges that he "watch[ed]" videos.  Compl. ¶ 65.  Under the plain and ordinary meaning of "borrowing," watching video content is not the legal equivalent of borrowing such content; Plaintiff cannot borrow watched content to NFL Enterprises within the plain and ordinary meaning of those terms.

Even if the Court were to conclude that "borrowed" is an ambiguous term, because R.I. Gen. Laws § 11-18-32 is a criminal statute, the rule of lenity would apply.  The United States Supreme Court has held that "if a law has both criminal and civil applications, the rule of lenity governs its interpretation in both settings."  *Whitman v. United States*, 574 U.S. 1003 (2014); *see also Leocal v. Ashcroft*, 543 U.S. 1, 11–12 n.8 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies").  As the Rhode Island Supreme Court has instructed, "[w]hen the meaning of a criminal statute is ambiguous, the policy of lenity in the construction of criminal statutes requires that the less harsh of two possible meanings be adopted," because "[p]enal statutes must be strictly construed in favor of the party upon whom a penalty is to be imposed."  *State v. Rice*, 811 A.2d 1144, 1145 (R.I. 2002) (internal citations omitted).  Accordingly, if "borrowed" is an ambiguous term in this context, the Court should adopt the interpretation "in favor of the party upon whom a penalty is to be imposed."

For all these reasons, Plaintiff's claim under § 11-18-32 should be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendant NFL Enterprises LLC respectfully requests that the

Court dismiss Plaintiff's Complaint, with prejudice, and order such other relief as the Court deems

just and proper.


Dated: December 13, 2021                    Respectfully submitted,

                                            By its attorneys,

                                            */s/ Angel Taveras*

                                            _____
                                            Angel Taveras (5552)
                                            **WOMBLE BOND DICKINSON (US) LLP**
                                            Independence Wharf
                                            470 Atlantic Avenue, Suite 600
                                            Boston, MA 02110
                                            Direct: (857) 287-3100
                                            Fax: (857) 287-6836
                                            Email: Angel.Taveras@wbd-us.com

                                            *Local Counsel for NFL Enterprises LLC*


                                            Eric Bosset*
                                            Marianne Spencer*
                                            Neelofer Shaikh*
                                            **COVINGTON & BURLING LLP**
                                            One CityCenter
                                            850 Tenth Street, NW
                                            Washington, DC 20001-4956
                                            Direct: (202) 662-5606
                                            Email: ebosset@cov.com
                                            Email: mspencer@cov.com
                                            Email: nshaikh@cov.com

                                            * Appearing Pro Hac Vice

                                            *Attorneys for NFL Enterprises LLC*


19

## <u>CERTIFICATE OF SERVICE</u>

I, Angel Taveras, hereby certify that on December 13, 2021 a true and accurate copy of the foregoing *NFL Enterprises LLC's Memorandum of Law In Support of Motion to Dismiss Plaintiff's Complaint* was filed electronically with the clerk of court via CM/ECF, which will then send a notification of such filing to all counsel of record and those who have registered for notice.


*/s/ Angel Taveras*
Angel Taveras